UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA AND STATE OF CALIFORNIA EX REL: RUSTY FRYBERGER, et al.,<br>Plaintiffs,<br>v.<br>KIEWIT PACIFIC COMPANY, et al.,<br>Defendants. | Case No. 12-cv-02698-JST<br><br>**ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO STAY AS MOOT**<br>Re: ECF No. 54 |

In this federal and state false claims case, Defendants move to dismiss or, in the alternative, to stay in favor of a state court action filed by Defendant Kiewit Pacific Co. ECF No. 54. The Court will grant the motion to dismiss and deny the motion to stay as moot.

**I.     BACKGROUND**

Relators Rusty Fryberger, Steve Ruel, Scott Thompson, Sr., SSL, LLC, and Surecast, LLC filed this *qui tam* action under seal pursuant to the federal False Claims Act, 31 U.S.C. §§ 3729–3731 and the California False Claims Act, Cal. Gov. Code §§ 12650–12656, on behalf of the United States Government and the State of California. The operative First Amended Complaint ("FAC") asserts that Defendants Kiewit Pacific Co., Kiewit Infrastructure Group, Ron Rattai, John Chamberlain, and Bruce Hesse violated 31 U.S.C. §§ 3729(a)(1)(A)-(C) and (G) and California Government Code §§ 12651(a)(2) and (7).

**A.     Factual Allegations**

The Court accepts the following allegations as true for the purpose of resolving this Rule 12(b)(6) motion. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).

The First Amended Complaint alleges that Defendants presented false claims for payment to the federal and California governments "by falsely certifying compliance with the specifications for installation of Mechanically Stabilized Earth ("MSE") Walls on the Sepulveda Pass Widening Project (contract C0882) in Los Angeles, California, on interstate 405. FAC ¶ 1. The project was funded by the United States through an April 2009 grant in the amount of $189,900,000 issued

1   pursuant to the American Reinvestment and Recovery Act, Pub. L. 111-5 (Feb. 17, 2009), and by
2   the State of California through the Los Angeles County Metropolitan Transportation Authority
3   ("LACMTA"). Id.
4       Defendant Kiewit Pacific Co. is the "Prime Design Build Contractor" on the project;
5   Kiewit Infrastructure Group is a related corporate entity. Id. ¶ 2. The individual Defendants are
6   employees and managers of Kiewit "who had actual knowledge" of the allegedly false claims. Id.
7   ¶ 3. The project was executed through a Design Build Contract. Relators allege that the contract
8   set out certain requirements that led Kiewit to make false certifications for payment. Id. ¶ 4. In
9   particular, Defendants allegedly falsely certified "compliance with SSL, LLC's proprietary MSE
10  retaining system, including, but not limited to certifying that it had been installed in compliance
11  with SSL, LLC's approved working drawings," id. ¶ 6, and "that they had furnished and installed
12  materials and had provided construction services required by SSL, LLC's MSE system when they
13  had not done so," id. ¶ 7.
14      MSE wall structures "generally consist of the precast wall panel which is tied back and
15  then backfilled with earth." Id. ¶ 27. Relators' company, SSL, LLC, contracted with Kiewit to
16  furnish concrete MSE wall panels, soil reinforcement, pins, bearing pads, filter cloth, and other
17  materials for forty-four MSE walls. Id. ¶ 17. SSL subcontracted Relator Fryberger's firm
18  Surecast West to fabricate and deliver precast panels to the job site. Id. ¶ 23. SSL's proprietary
19  MSE system was pre-qualified under the Caltrans Standard Specifications, dated May 2006,
20  section 10-1.50. Id. ¶ 18. SSL was not contracted to install the panels; instead, SSL provided only
21  the materials for the panels and "technical field assistance." Id. ¶ 19. SSL also agreed to furnish
22  "working shop drawings in accordance with Caltrans' May 2006 Standard Specifications." Id. ¶
23  17. Kiewit was responsible for "developing, providing, and completing all Design Documents for
24  the Project as described in the Contract Documents." Id. ¶ 21.
25      MSE wall systems like SSL's depend on drainage to carry water from the backfill through
26  "underdrains" placed at the low point along the width of the wall and backfill. Id. ¶ 29.
27  Specification 68.-1 of the standard specifications provides for underdrains that are four-inch
28  perforated pipes. Id. The underdrains carry the water away through outlet drains that discharge at

2

the precast concrete face of the wall installation. Id. ¶ 30. The most frequent cause of failure of MSE and other retaining wall systems is improper installation of drains; the walls fail due to hydrostatic pressure on the face of the MSE wall and settlement of the structural fill and wall foundation. Id. ¶ 31. The standard design specification for the MSE installation included detailed parameters for the installation of the underdrains. Id. ¶¶ 32–33. The First Amended Complaint alleges that the specification required a certification of compliance with the underdrain specification pursuant to section 6-1.07. Id. ¶ 34.

Also important to the success of an MSE retaining wall system is the installation of the underdrains in permeable material, which is gravelly and resistant to compaction. Id. ¶ 37. The specifications provide, for example, that compaction of the permeable material "is not required" and that "equipment shall not be operated directly on the permeable material or filter fabric." Id. ¶ 36–37. SSL's contract, design, and working drawings showed the installation of underdrains in permeable material. Id. ¶ 38.

The contract also provided for the development of Quality Assurance and Quality Control ("QA/QC") Plans. The QA/QC Plan requirements obligated Kiewit to maintain "complete and accurate written records that provide objective evidence of QA/QC activities." Id. ¶ 43. They also authorized Kiewit's Design Coordination Manager to release drawings from construction only after the required approvals and signatures were obtained from the owner of the site and certain Kiewit employees. "The drawings could not thereafter be varied from." Id. ¶ 43.

During SSL's design work phase, Kiewit asked Caltrans whether it could eliminate the required underdrains and outlet drains; Caltrans refused. Id. ¶ 48. Nevertheless, Sherman Lee of Kiewit repeatedly asked SSL to leave out underdrains on the working drawings in January and February 2010. Id. ¶ 49. Lee also asked SSL to write on drainage drawings: "see contract plans for details on drainage." Id. SSL complied, but Caltrans rejected certain MSE working drawings because they did not "show and call out" the underdrains, cleanout pipes, or outlet pipes. Id. ¶ 50. After MSE wall 1897 failed, Kiewit "maintained that Caltrans had removed the requirement for permeable materials from the underdrain specifications. Caltrans denied this claim." Id. ¶ 51. Relators allege that Kiewit failed to install the necessary drainage components despite certifying to

LACMTA that the components were installed on, *inter alia*, several QA/QC checklists. Id. ¶¶ 56, 58. For example, a superintendent for Kiewit stopped construction on wall 1672 because it lacked "drainage detail," but he was overruled and construction proceeded. Id. ¶ 56.

The MSE wall installation proceeded through day and night shifts. During the day, MSE wall panel units would be placed on a concrete leveling pad, stabilized, and surveyed. Due to the need for truck traffic to place the structural backfill, that operation was performed at night. Consequently, "LACMTA needed to rely entirely upon Kiewit's QA/QC program to monitor that phase of the work." Id. ¶ 46. But according to Relators, Kiewit began installing MSE wall panels without an approved QA/QC plan. Id. ¶ 53. Relators allege a number of false claims in addition to the failure to install underdrains. First, Kiewit allegedly installed walls 1665 and 1667 with "sub-optimum soils at the foundation grade" causing differential settlement; those walls were subsequently torn down. Id. ¶ 55. The wire mesh straps on walls 16546 and 1634 were improperly installed; Kiewit subsequently fired a superintendent who brought the improper installation to the attention of Bruce Hesse, Segment 1 manager for Kiewit. Id. ¶ 57. Kiewit also allegedly failed to install inspection wires, which are used to survey the extent of corrosion over time, or cut them to two feet in length to make it appear they were properly installed when, in fact, they were not. Id. ¶ 60. The First Amended Complaint alleges a number of other defects in Kiewit's installation work as well.

In October and November 2011, SSL discovered that panels on wall 1897 were moving, following near-record rainfall near the site of the wall. Id. ¶ 65. Relators visited the site and witnessed panel movement. Subsequently, some panels disconnected from the wall because the reinforcing mesh was improperly installed. Id. ¶ 66. In January 2012, Relators met with Kiewit's fired superintendent, Zachary Strawn, who executed a declaration documenting Kiewit's deviations from specifications and the falsification of QA/QC documents. Id. ¶ 67. Relators disclosed those documents to LACMTA prior to filing this suit. Id. After Relators notified Kiewit of the wall failure, which Relators stated by letter was caused by a number of factors including improper drainage, pooling water, and saturated backfill, Kiewit initiated an investigation. In February 2012, Kiewit terminated SSL's materials contract for default. Id. ¶ 70.

4

Kiewit billed LACMTA periodically. Id. ¶ 44. Relators allege that Kiewit billed for underdrain installations and permeable material "as part of the pay items for retaining wall and concrete barriers." Id. ¶ 45d. According to Relators:

> A pre-condition to payment for the MSE system was Kiewit's furnishing a 'certificate of compliance' under the Standard Specifications stating that the material meets the criteria of the proprietary system when measured in accordance with all test methods and standards specified in the Standard Specifications, the special provisions, and the approved working drawings. Kiewit thereby falsely certified compliance with the MSE wall working drawings for SSL's system in order to receive payment for the installation of the MSE walls.

Id. In particular, Article 2 of the contract required Kiewit to comply with the specifications in its construction of the project. Id. ¶ 82. Article 16.4 required Kiewit to sign and certify that the work had been performed in accordance with contract documents prior to receiving each progress payment. Id. ¶ 83. And, in addition to falsely certifying the installation of the underdrain components, Relators allege that Kiewit also certified that proper QA/QC measures procedures were in effect despite Kiewit's refusal to heed QA/QC personnel statements indicating quality problems in Kiewit's construction work. Id. 84a–g.

Relators assert that Defendants' conduct violated the federal and California False Claims Acts. Id. ¶ 90, 92. Relators further allege that Kiewit retaliated against SSL, entitling SSL to recover damages caused by wrongful suit against its material bond. Id. ¶ 93. Finally, SSL alleges that Kiewit's termination of SSL's contract constituted defamation because Kiewit falsely represented to Caltrans that SSL's proprietary MSE system was unsuited for installation. Id. ¶ 96. Caltrans withdrew approval of SSL's proprietary system for state highway projects from March 2012 to October 2012, disabling SSL from competing for projects totaling 387,799 square feet of wall area and $6,786,482.50 (based on the average bid price) throughout California. Id. ¶ 97. SSL claims its total damage in this respect was $3,393,241.25 because SSL "customarily is successful on over 50% of the projects upon which it competes." Id.

Additionally, SSL alleges that the State of Washington suspended approval of its MSE system, disabling it from competing on project there as well; using the same fifty percent figure,

SSL estimates its damages from Washington State to be $719,372.50.

### B. Defendants' Request for Judicial Notice and Supplemental Factual Material

Although a court's review on a motion to dismiss is generally limited to the allegations in the complaint, Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001), courts may properly take judicial notice of material attached to the complaint, and of matters in the public record. Fed. R. Evid. 201(b). See, e.g., Castillo-Villagra v. INS, 972 F.2d 1017, 1026 (9th Cir. 1992). In addition, the "incorporation by reference" doctrine allows judicial notice of a document attached by a defendant to a motion to dismiss when a "plaintiff's claim depends on the contents of a document" and "the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). Therefore, a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment; however, courts may not take judicial notice of facts subject to reasonable dispute. Lee, 250 F.3d at 689. A court "shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d).

Defendants submitted several judicially noticeable documents with their motion, including: the First Amended Complaint filed in Kiewit Pacific Co. v. SSL, LLC, Case No. BC496136 (LA Super Ct. May 6, 2013); SSL's cross-complaint in that action, filed July 15, 2013; an order staying Great American Insurance Co. v. Kiewit Pacific Co., No. 12-cv-8106-ABC (C.D. Cal. Feb. 6, 2013); and the complaint in that action, filed September 20, 2012. Defendants' request for judicial notice of those documents is GRANTED. The Court need not take judicial notice of documents already filed in this action, however, and Defendants' request for judicial notice of those documents is DENIED as moot.

Defendants also submitted extensive factual material with their motion through declarations. First, attached to the declaration of Jennifer Totten, Kiewit's Technical Lead on the Sepulveda Pass Widening Project, are excerpts of the Design/Build Contract, dated April 29, 2009. Because the action is premised, in part, on that contract, the Court will take judicial notice of it. Much of the other material submitted by Defendants is not judicially noticeable and may

1  only be considered by the Court if it relates to Defendants' challenge to the Court's subject matter
2  jurisdiction over Relators' claims.  In particular, Defendants argue, as discussed below, that the
3  public disclosure bar contained in the federal and California false claims laws is jurisdictional, and
4  therefore requires the Court to consider factual material outside the complaint and judicially
5  noticeable documents to resolve the dispute.  See Mot., ECF No. 54-1 p. 9 (citing US ex rel.
6  Mateski v. Raytheon Co., No. 06–cv–3614–ODW, 2013 WL 692798, at *2 (C.D. Cal. Feb. 26,
7  2013)).

8         Thus, to determine whether the Court can take notice of the documents in question, the
9  Court must first determine whether the public disclosure bar is jurisdictional.  The predecessor
10 statute to the Federal False Claims Act prior to its amendment in 2010 provided: "No court shall
11 have jurisdiction over an action" subject to the public disclosure bar.  See Mateski, 2013 WL
12 692798, at *2 (noting predecessor statute applied because action was filed prior to 2010); Graham
13 Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson, 559 U.S. 280, 286, (2010)
14 (discussing predecessor statute).  However, through the 2010 amendments to the FCA, Congress
15 deleted that phrase and replaced it with: "The court shall dismiss an action or claim" subject to the
16 public disclosure bar.  31 U.S.C. § 3730(a)(4)(A), as amended by 124 Stat. 901, Pub. L. 111-148,
17 Title X, § 10104(j)(2), Mar. 23, 2010.[1]  The legislative history on the change in language is
18 "opaque" as the amendments were "inserted without floor debate or other discussion, as
19 'technical' amendments."  Graham Cnty., 559 U.S. at 281.

20        The change in language raises the question whether the public disclosure bar in its
21 amended form (a) deprives the Court of subject matter jurisdiction or (b) can be raised as a
22 substantive defense.  Few courts have interpreted the 2010 change in language.

23        "To ward off profligate use of the term 'jurisdiction,'" the Supreme Court has adopted "a
24 'readily administrable bright line' for determining whether to classify a statutory limitation as
25 jurisdictional . . . .  We inquire whether Congress has 'clearly state[d]' that the rule is
26 jurisdictional; absent such a clear statement, we have cautioned, 'courts should treat the restriction

---

[1] The California legislature amended the California False Claims Act, effective January 1, 2013, to conform to the federal amendment to the FCA.  Cal. Gov. Code § 12652(d)(3)(A) as amended by Stats. 2012, c. 647 (A.B. 2492), § 3.

1 as nonjurisdictional in character.'" Id. (quoting Arbaugh v. Y & H Corp., 546 U.S. 500, 516 (2006) (citing Gonzalez v. Thaler, 565 U.S. ----, 132 S.Ct. 641, 648–649 (2012)). The Court's "bright line" rule does not require that Congress "incant magic words in order to speak clearly," but that observation does not change the default: absent a clear congressional statement to the contrary, statutory rules are non-jurisdictional. Id.

Here, there was a "clear statement" from Congress that the rule was jurisdictional, but Congress deleted it. Congress replaced the description of the rule as jurisdictional with language merely requiring dismissal. The Court therefore concludes, as have most of the few courts to consider the same question, that the amended public disclosure bar is not jurisdictional. See Ping Chen ex rel. U.S. v. EMSL Analytical, Inc., No. 10-cv-7504-RA, 2013 WL 4441509, at *8–9 (S.D.N.Y. Aug. 16, 2013) (concluding public disclosure bar is non-jurisdictional); U.S. ex rel. Paulos v. Stryker Corp., No. 11-cv-0041-W-ODS, 2013 WL 2666346, at *3 (W.D. Mo. June 12, 2013) (holding bar is non-jurisdictional); U.S. ex rel. Fox Rx, Inc. v. Omnicare, Inc., No. 11-cv-962-WSD, 2013 WL 2303768, at *8 n. 16 (N.D. Ga. May 17, 2013) (observing bar is non-jurisdictional); United States v. Chattanooga-Hamilton Cnty. Hosp. Auth., No. 10-cv-322, 2013 WL 3912571, at *7 n. 6 (E.D. Tenn. July 29, 2013) (same).[2]

Because the Court concludes the public disclosure bar is non-jurisdictional, the Court cannot consider factual material that is not either contained in the complaint as allegations, attached to the complaint, or otherwise judicially noticeable. However, as the above-cited cases demonstrate, media reports are judicially noticeable documents provided they are not considered by the Court for the truth of their content, but rather for the fact that the reports were made. See, e.g., Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 981 n. 18 (9th Cir. 1999) (taking judicial notice of media reports submitted by defendants) (citing Fed. R. Evid. 201(d)); Ping Chen, 2013 WL 4441509, at *8–9 (taking judicial notice of "the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents")

---

[2] But see U.S. ex rel. Beauchamp v. Academi Training Ctr., Inc., No. 11-cv-371, 2013 WL 1189707, at *9 (E.D. Va. Mar. 21, 2013) (holding public disclosure bar remains jurisdictional "because it commands district courts to dismiss actions subject to the public disclosure bar, unless the Government specifically opposes the application of the bar.").

(citing Staehr v. Hartford Fin. Servs. Group, Inc., 547 F.3d 406, 425 (2d Cir.2008)). Government investigation reports relating to the false claims at issue are also judicially noticeable, as the authenticity of such public documents is beyond dispute.[3] The Court will therefore consider the Caltrans Monthly Status Reports, Caltrans' March 16, 2012 investigation report, and the news articles attached as exhibits F and G to the declaration of Michael McCauley, counsel for Defendants. The Court finds that the remaining documents submitted by Defendants, including two presentations that were produced by government agencies but are not government reports, are not judicially noticeable, and the Court will not consider them. Nor will the Court consider any facts asserted via Defendants' declarations.

As discussed below, the Court concludes on the basis of the documents before it that (a) the fraud alleged in the Complaint was "publicly disclosed" and (b) that Plaintiff is not an "original source." His claims must therefore be dismissed.

## II. LEGAL STANDARDS

On a motion to dismiss, the Court accepts the material facts alleged in the complaint, together with all reasonable inferences to be drawn from those facts, as true. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To be entitled to the presumption of truth, a complaint's allegations "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011), cert. den'd, --- U.S. ----, 132 S.Ct. 2101 (2012).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a

---

[3] Relators object generally to the Court's consideration of factual material outside the scope of the complaint's allegations (except for the supplemental factual material Relators themselves attached to their opposition brief). Relators do not dispute the authenticity of any of the documents submitted by Defendants.

defendant has acted unlawfully." Iqbal, 556 U.S. at 687. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In addition, fraud claims are subject to a heightened pleading standard. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The allegations must be specific enough to give a defendant notice of the particular misconduct alleged to constitute the fraud such that the defendant may defend against the charge. Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). In general, allegations sounding in fraud must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

### III. ANALYSIS

The False Claims Act ("FCA") authorizes private parties with knowledge of past or present fraud on the United States to sue on the Government's behalf to recover civil penalties and damages. 31 U.S.C. §§ 3729–3733. Relators assert that Defendants violated the provisions of the FCA that apply to anyone who:

> (A)  knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B)  knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>
> (C)  conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);
>
> or (G)  knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, . . . .

31 U.S.C. §3729(a)(1)(A)–(C), (G). Similarly, the California False Claims Act ("CFCA") authorizes private parties to sue on behalf of the State to recover civil penalties and damages. Cal. Gov. Code § 12650, *et seq.* Relators assert that Defendants violated the provisions of the CFCA

1  that apply to anyone who:

2      (2)  Knowingly makes, uses, or causes to be made or used a false
    record or statement material to a false or fraudulent claim,

3  . . . , or

4

5      (7)  Knowingly makes, uses, or causes to be made or used a false
    record or statement material to an obligation to pay or transmit
    money or property to the state or to any political subdivision, or
    knowingly conceals or knowingly and improperly avoids, or
    decreases an obligation to pay or transmit money or property to the
    state or to any political subdivision.

8  Cal. Gov. Code § 12651(a)(2), (7).

    Defendants move to dismiss on the grounds that Relators have failed to establish the statutory elements of the false claims, and that the Court must dismiss this action pursuant to the public disclosure bar found in both the FCA and the CFCA.

### A. Public Disclosure Bar

Both the FCA and the CFCA require courts to dismiss false claims suits based on information already disclosed publicly unless the relator is an "original source" of the information. See 31 U.S.C. § 3730(e)(4)(A); Cal. Gov. Code § 12652(d)(3)(A).

#### 1. Disclosure

The FCA's public disclosure bar requires that courts dismiss a false claims action, unless opposed by the Government, if "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed (i) in a Federal criminal, civil or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A). The CFCA's public disclosure bar is substantially identical, and requires that courts dismiss any action that falls under the bar "unless opposed by the Attorney General or prosecuting authority of a political subdivision." Cal. Gov. Code § 12652(d)(3)(A). See generally, United States v. Alcan Elec. & Eng'g, Inc., 197 F.3d 1014, 1018 (9th Cir. 1999); Bates v. Mortgage Elec. Registration Sys., Inc., 694 F.3d 1076, 1081 (9th Cir. 2012).

Importantly, "the substance of the disclosure need not contain an explicit 'allegation' of fraud . . . so long as the material elements of the allegedly fraudulent 'transaction' are disclosed in the public domain." A-1 Ambulance Serv., Inc. v. California, 202 F.3d 1238, 1243 (9th Cir. 2000). See also, Alcan Elec. & Eng'g, 197 F.3d at 1020 ("fraud need not be explicitly alleged to constitute public disclosure.").

The bar applies "when the prior public disclosures are 'sufficient to place the government on notice of the alleged fraud' or 'practice prior to the filing of the qui tam action.'" Bates, 694 F.3d at 1081 (CFCA) (quoting State ex rel. Grayson v. Pac. Bell Tel. Co., 142 Cal. App. 4th 741, 748 (2006) (CFCA) (citing U.S. ex rel. Findley v. FPC–Boron Emps.' Club, 105 F.3d 675, 688 (D.C.Cir.1997) (FCA)). The Supreme Court has repeatedly observed that the text of the public disclosure bar applies with a "broad sweep" to the forum in which the disclosure occurs, and that the phrase "allegations or transactions" is "wide-reaching." Schindler Elevator Corp. v. U.S. ex rel. Kirk, --- U.S. ----, 131 S. Ct. 1885, 1891 (2011) (quoting Graham Cnty., 559 U.S. at 290 (2010)).

Here, Defendants point primarily to two articles published in 2011 discussing the failure of MSE wall panels on the Sepulveda Pass Widening Project as public disclosures in the "new media" barring this action.

The first article, titled "Some 405 Panels Deficient," published in the Santa Monica Dispatch on December 10, 2011, begins: "Metro said it has no cause yet for the failure of a retaining wall section of the 405 freeway improvement project in Sepulveda Pass, but is aware of it, in a statement released this week." McCauley Decl. ISO MTD, ECF No. 40, Ex. F. The article states that an MSE retaining wall suffered a "localized failure" on December 1, 2011, and that "[t]he project has been aware of deficiencies in this portion of the wall for a few weeks and were preparing a partial deconstruction plan when the panels failed . . . . The contractor is currently performing an in-depth investigation to the cause." Id. Finally, the article states: "Once a thorough and complete investigation has been finalized and approved by Metro and Caltrans, the contractor will create a mitigation plan." Id.

Second, Defendants submitted an article titled "Oopsies! New Retaining Wall Put Up in

Sepulveda Pass is Collapsing," published on the web blog "LAist" on December 9, 2011. McCauley Decl., Ex. G. The article reports on the MSE wall failure, and states: "A Metro Community Relations spokesperson said that they will be looking at all of the walls to see what happened and to ensure this does not happen again." Id.

Relators argue that the news reports do not trigger the public disclosure bar because Relators allege fraudulent conduct not specifically revealed by the reports. The Court is not persuaded.

The Ninth Circuit's decision in Wang v. FMC Corp., 975 F.2d 1412, 1417 (9th Cir. 1992), is instructive. There, the *qui tam* relator alleged that a government contractor defrauded the government in its performance of a contract for a Multiple Rocket Launch System (MRLS), a "cousin" of the Bradley Fighting Vehicle. Id. at 1413, 1417. The MRLS had been experiencing gear failures, and Wang, who worked for the *qui tam* defendant and briefly worked on the MRLS project, made recommendations on how to fix the problem. Id. at 1417. Wang was subsequently fired; a year later, he filed the *qui tam* action. At summary judgment, Wang "submitted newspaper accounts describing problems with the Bradley's transmission system, apparently published before the date of Wang's complaint," giving rise to the question of whether the public disclosure bar applied. Id. The Ninth Circuit held that it did: "It is true that Wang's allegation about the Bradley is supported by a few factual assertions never before publicly disclosed; but 'fairly characterized' the allegation repeats what the public already knows: that serious problems existed with the Bradley's transmission." Id.

The decision in Wang is directly analogous to Relators' case here. "Fairly characterized," Relators' complaint "repeats what the public already knows: that serious problems existed with" the MSE retaining walls, even if Relators' allegations are "supported by a few factual assertions never before publicly disclosed." Id.

Relators argue that nothing in the news reports was sufficient for the government to "adequately conduct an investigation so as to decide whether to prosecute." Opp., ECF No. 59 p. 12. However, the news reports demonstrate that the government was aware of the problems, and that LACMTA, or "Metro," had already begun conducting an investigation and was therefore "on

13

notice" of the failures at the time the complaint was filed. Relators may disagree with the outcome of the investigation, but there is no dispute that a prior public disclosure caused the government to undertake one.

### 2. Original Source Exception

The public disclosure bar does not apply even if the allegations or transactions alleged in the claim were publicly disclosed if the relator is an "original source" of the information. The FCA defines "original source" as "an individual who either (i) prior to a public disclosure . . . has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B). The CFCA employs a substantially identical definition of "original source." See Cal. Gov. Code § 12652(d)(3)(B).

Relators do not contend that they provided the government with their allegations prior to the public disclosure of the retaining wall failure. Instead, Relators argue that they are original sources of information that is "independent of and materially adds to the publicly disclosed allegations or transactions" because they provided the government with the executed declaration of superintendent Strawn, indicating that Kiewit failed to follow QA/QC and MSE retaining wall installation requirements despite certifying compliance with them. See FAC ¶ 67. Relators do not identify any other information or documents they provided the government prior to filing this action.

Defendants correctly point out that Relators are not "original sources" of information because the information they provided the government came not from their own "independent" knowledge but from Strawn's. See U.S. ex rel. Devlin v. State of Cal., 84 F.3d 358, 361 (9th Cir. 1996) (where relator was informed of fraud by participant in the fraud, relator was not "original source"). In order to be classified as an "original source," a relator must have "direct and independent" knowledge of the alleged fraud. Id. at 360 (citing 31 U.S.C. § 3730(e)(4)). This means the relator must have "discovered the information underlying his allegations of wrongdoing

14

through his own labor." Id.

Prior to filing this lawsuit, Relators provided the January 24, 2012 declaration of former Kiewit supervisor Zachary Strawn to the LACMTA. The information in that document did not come from Relators' "own labor." The news reports discussed above were published approximately six weeks before that. Relators have failed to point to any information they provided the government prior to filing suit that was both independent of, and materially added to, the public disclosure that the wall had failed. They therefore do not qualify as "original sources" of information within the meaning of either the FCA or the CFCA.

Because Relators' FCA and CFCA claims are subject to the public disclosure bar, and because Relators do not qualify as original sources of information within the meaning of those statutes, their FCA and CFCA claims are DISMISSED with leave to amend.[4]

### B. False Claim Elements

Defendants move to dismiss on the independent ground that Relators have failed to establish the elements of a false claims action. The elements of any FCA or CFCA cause of action are: "(1) a false or fraudulent claim (2) that was material to the decision-making process, (3) which defendant presented, or caused to be presented, to the [government] for payment or approval (4) with knowledge that the claim was false or fraudulent." Hooper v. Lockheed Martin Corp., 688 F.3d 1037, 1047 (9th Cir. 2012) (citing United States v. Bourseau, 531 F.3d 1159, 1171 (9th Cir. 2008)). Defendants argue that Relators have failed to establish a false claim, materiality, and scienter.

#### 1. False Claim

Liability attaches under the FCA or CFCA only when the defendant has submitted a "false claim" for payment. U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011). For a relator "to succeed on a false certification theory, some falsity must be alleged." U.S. ex rel. Hendow v. University of Phoenix, 461 F.3d 1166, 1171 (9th Cir. 2006). In false claims cases, "[i]t is the false *certification* of compliance which creates liability when

---

[4] Should Relators choose to amend the First Amended Complaint, Relators shall specifically describe the information they allege they provided the government prior to filing suit.

certification is a prerequisite to obtaining a government benefit." U.S. ex rel. Hopper v. Anton, 91 F.3d 1261, 1266 (9th Cir. 1996).

Defendants argue that Relators fail adequately to allege a false claim because the contractual process for addressing non-conforming work on the project has not ended. This argument is neither persuasive nor supported by Defendants' authority. In U.S. ex rel. Lindenthal v. Gen. Dynamics Corp., 61 F.3d 1402, 1412 (9th Cir. 1995), cited by Defendants, the Ninth Circuit merely affirmed a district court's finding that defendant's technical drawings conformed to the parties' contract — in other words, that there had never been a false claim. And in United States v. Southland Mgmt. Corp., 326 F.3d 669, 676 (5th Cir. 2003), the Fifth Circuit held only that the contract entitled the defendant to continue certifying that the property was "decent, safe, and sanitary" by virtue of a technical feature of the contract, even after the Department of Housing and Urban Development had notified the defendant that the property was not in such a condition. Id. ("During the corrective action period, then, claims for housing assistance payments are not false claims because they are claims for money to which the Owners are entitled."). In both cases, the court determined that a defendant was always in compliance with a government contract. That is not the allegation here.

### 2. Materiality

For a relator to establish a false certification false claim, the certification must be material to the payment made by the government, Hendow, 461 F.3d at 1171, and must be a prerequisite to obtaining the government benefit, Hopper, 91 F.3d at 1266. Defendants argue that the First Amended Complaint inadequately explains the certifications at issue, and fails adequately to allege that the certifications were material to the payment of money to Defendants.

The FAC clearly and repeatedly alleges that Article 16.4 of the Design/Build Contract executed by LACMTA and Kiewit "required that the designer builder sign and certify that the work had been performed in accordance with the contract documents" on each application for construction progress payments. FAC ¶ 82. Although Kiewit produced excerpts of the Design/Build Contract, neither party has submitted Article 16.4 to the Court; for purposes of this motion to dismiss, the Court must therefore accept the FAC's allegation as true. Relators also

16

1  allege that the contract documents include the Caltrans design specifications with which Kiewit
2  failed to comply. Those allegations taken together adequately allege that Kiewit falsely certified
3  compliance with specifications material to Kiewit's ability to obtain progress payments on the
4  project. Moreover, Relators allege that Kiewit submitted invoices for materials Kiewit did not
5  purchase or install in the MSE retaining walls. Finally, Relators allege Kiewit falsely certified
6  compliance with QA/QC requirements. That allegation is also sufficiently stated.

### 3. Scienter

The False Claims Act defines "knowing" to include a defendant who, with respect to false information, "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). However, the FCA itself provides that "no proof of specific intent to defraud" is required to satisfy the scienter requirement. 31 U.S.C. § 3729(b)(1)(B). See, e.g., Castillo-Villagra v. INS, 972 F.2d 1017, 1026 (9th Cir. 1992). In short, "[s]o long as the statement in question is knowingly false when made, it matters not whether it is a certification, assertion, statement, or secret handshake; False Claims liability can attach." Hendow, 461 F.3d at 1172.

Defendants argue in a footnote that scienter is inadequately alleged because materiality is inadequately alleged. As discussed above, Relators adequately allege materiality, and the Court finds scienter adequately pled as well.

Consequently, Relators have adequately pled false claims for purposes of the FCA and CFCA.

### C. Reverse False Claim

Defendants move to dismiss Relators' claim based on a reverse false claim in violation of California Government Code section 12651(a)(7), which the FAC states prohibits false certifications "to avoid or decrease Kiewit's obligation to pay money to the State of California." FAC ¶ 9. Relators allege only that Kiewit made false certifications to obtain payment from the government, not to decrease or avoid payment Kiewit owed the government. Relators' claim under section 12651(a)(7), if one has been asserted, is therefore inadequately pled. On

amendment, Relators may amend their claim for reverse false claim consistent with the terms of this Order.

### D. Individual Defendants and Kiewit Infrastructure Group

The individual Defendants move to dismiss pursuant to Rule 9(b) because the First Amended Complaint does not allege with particularity the conduct of each individual Defendant upon which Relators' claims are based.

Relators argue that Defendant Hesse terminated superintendent Strawn because he stopped construction due to a lack of drainage detail, and because he brought the lack of wire mesh straps in walls 1656 and 1634 to Hesse's attention. Opp., pp. 22–23. That allegation is insufficient to state a claim under the FCA or the CFCA. "A plaintiff alleging a [False Claims Act] retaliation claim must show three elements: (1) that he or she engaged in activity protected under the statute; (2) that the employer knew the plaintiff engaged in protected activity; and (3) that the employer discriminated against the plaintiff because he or she engaged in protected activity." Tribble v. Raytheon Co., 414 F. App'x 98, 99 (9th Cir. 2011) (quoting Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1103 (9th Cir. 2008). Here, there is no allegation that Strawn had a good faith belief that Kiewit was "possibly committing fraud against the government," id. (quoting Moore v. Cal. Inst. of Tech. Jet Propulsion Lab., 275 F.3d 838, 845 (9th Cir. 2002), that Strawn engaged in protected activity, that Kiewit knew that he had engaged in protected activity, or that Strawn was terminated because of it.

Relators allege that Relator Ruel confronted Defendant Rattai over Kiewit's failure to install a proper drainage system in wall 1897. FAC ¶ 69. That allegation, standing alone, does not support any of Relators' claims.

Finally, Relators do not dispute that they have failed to allege any claims against Defendant Chamberlain.

Relators also fail adequately to allege what role, if any, Kiewit Infrastructure Group had in the alleged fraud. Relators allege only that Kiewit Pacific Co. acted through Kiewit Infrastructure Group. That allegation, standing alone, is insufficient to state a claim under the FCA and CFCA, which are subject to the heightened pleading requirement of Rule 9(b).

The claims against the individual Defendants and Kiewit Infrastructure Group are inadequately pled. On amendment, Relators may amend their claims against the individual Defendants and Kiewit Infrastructure Group consistent with the terms of this Order.

### E. Conspiracy

Defendants move to dismiss Relators' conspiracy claim. Relators do not respond. The conspiracy claim appears to have been asserted in paragraph four of the First Amended Complaint, citing 31 U.S.C. § 3729(a)(1)(C). The First Amended Complaint does not contain any allegations concerning a conspiracy claim. And, because the Court finds that Relators inadequately allege any false claims with respect to any entity but Kiewit Pacific Co., no conspiracy is possible in any event. Relators may amend their conspiracy claim consistent with the terms of this Order.

### F. Retaliation and Defamation

The First Amended Complaint purports to state claims for retaliation and defamation on behalf of SSL, LLC. SSL does not dispute Defendants' motion to dismiss the retaliation claim, if one has been asserted. That claim is therefore DISMISSED with leave to amend.

As for the defamation claim, SSL argues only that its "short plain statement of the claim" is sufficient. The First Amended Complaint alleges only that Kiewit represented to Caltrans that SSL's MSE system "was unsuited for installation on contracts such as the one with LACMTA." FAC ¶ 96. No other allegations describe the allegedly defamatory statements, other than vague allegations that Kiewit made "false and defamatory representations." Those legal conclusions are insufficient to state a claim. Moreover, the statement as described by SSL is too vague to ascertain whether it was a permissible "opinion" statement, or false and defamatory. See Unelko Corp. v. Rooney, 912 F.2d 1049, 1053 (9th Cir. 1990). That claim is therefore DISMISSED with leave to amend.

### IV. MOTION TO STAY

Kiewit moves in the alternative to stay this action, pending conclusion of an action Kiewit filed in state court against Relator SSL and others for breach of contract and other claims arising out of the same MSE retaining wall failure. Kiewit Pacific Co. v. SSL LLC, Case No. BC496136 (LA Super Ct. May 6, 2013). Because the Court now dismisses all of Relators' claims, it will

19

decline to address the motion to stay, which is denied as moot.

## V. CONCLUSION

For the foregoing reasons, the Court hereby orders as follows:

1. Relators' FCA and CFCA claims are barred by the public disclosure bar and are DISMISSED WITH LEAVE TO AMEND;

2. To the extent Relators assert a claim for submitting a reverse false claim, Relators fail to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), and that claim is DISMISSED WITH LEAVE TO AMEND;

3. Relators' claims against the individual Defendants and Kiewit Infrastructure Group fail to satisfy the pleading requirements of Rule 9(b) and are DISMISSED WITH LEAVE TO AMEND;

4. Relators' conspiracy claim fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) and is DISMISSED WITH LEAVE TO AMEND;

5. Relators' retaliation and defamation claims fail to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) and are DISMISSED WITH LEAVE TO AMEND; and

6. Defendants' Motion to Stay is DENIED as moot.

7. Any amendment to the First Amended Complaint shall be filed within thirty days from the date of this Order. Plaintiffs are further directed to clearly and separately list each cause of action asserted as a separate, numbered claim for relief.

**IT IS SO ORDERED.**

Dated: October 24, 2013

_____
JON S. TIGAR
United States District Judge