UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA AND
STATE OF CALIFORNIA EX REL:
RUSTY FRYBERGER, et al.,
                Plaintiffs,
      v.

KIEWIT PACIFIC COMPANY, et al.,
                Defendants.

Case No.  12-cv-02698-JST

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT, AND GRANTING STAY**

Re: ECF No. 78

Before the Court is Defendants' Motion to Dismiss the Second Amended Complaint, or in the Alternative, to Stay.  ECF No. 78.  The Court will grant in part and deny in part the motion to dismiss, and grant the motion to stay.

## I.      BACKGROUND

The background of this case is discussed in more detail in the Court's prior Order, ECF No. 69, <u>United States v. Kiewit Pac. Co.</u>, 2013 WL 5770514 (N.D. Cal. Oct. 24, 2013).

Relators Rusty Fryberger, Steve Ruel, Scott Thompson, Sr., SSL, LLC, and Surecast, LLC filed this *qui tam* action under seal pursuant to the federal False Claims Act, 31 U.S.C. §§ 3729–3731 ("FCA") and the California False Claims Act, Cal. Gov. Code §§ 12650–12656 ("CFCA"), on behalf of the United States Government and the State of California.  Relators allege that Defendants Kiewit Pacific Company and Kiewit Infrastructure Group presented false claims for payment to the federal and California governments related to contract work performed on the Sepulveda Pass Widening Project (contract C0882) in Los Angeles, California, on interstate 405. The project was funded by the United States through an April 2009 grant in the amount of $189,900,000 issued pursuant to the American Reinvestment and Recovery Act, Pub. L. 111-5 (Feb. 17, 2009), and by the State of California through the Los Angeles County Metropolitan Transportation Authority ("LACMTA").  Defendant Kiewit Pacific Company is the "Prime Design Build Contractor" on the project.  Relators' company, SSL, LLC, contracted with Kiewit to furnish concrete Mechanically Stabilized Earth ("MSE") wall panels, soil reinforcement, pins,

bearing pads, filter cloth, and other materials for forty-four MSE walls.  SSL subcontracted Relator Fryberger's firm, Relator Surecast, to fabricate and deliver precast panels to the job site.

Kiewit began installing MSE walls in October 2010.  SAC, ECF No. 70 ¶ 57.  During near-record rainfall in October and November 2011, panels of MSE wall 1897 began to shift.  Id. ¶ 79.  On November 30, 2011, six wall panels disconnected from MSE wall 1897.  Id. ¶ 81.  In December 2011, the news media began to report on the wall failure.  Id. ¶ 82.  One report included a quotation from a Metro Community Relations spokesperson who said that "'they would be looking at the walls to see what happened and to insure that this does not happen again.'"  Id. ¶ 82.  Another report stated: "The Contractor is currently performing an in-depth investigation to the cause of the localized failure.  Experts have been brought in to collect forensic evidence."  Id. ¶ 83.  It is clear from the media reports, discussed in more detail in the Court's prior Order, that the state and local governments were aware of the failure of MSE wall 1897, and that they had initiated and were involved in investigating the failure.  Relators' Second Amended Complaint alleges that, though LACMTA in particular was involved in the investigation, Kiewit was tasked as the primary investigator of the wall failure.  Id. ¶¶ 83–85.

Relators allege that Defendants falsely certified compliance with the specifications for installation of MSE walls on the project.  In particular, the operative Second Amended Complaint alleges that Defendants knowingly and willfully failed to provide underdrains under the MSE walls, that they installed inoperable underdrains, that they failed to install permeable materials around the drains, that they falsified quality assurance reports, and that they broke reinforcing mesh by driving over it with heavy equipment.  Id. ¶ 15.  Relators also identify numerous other alleged deficiencies in Kiewit's work on the project, some of which Relators allege contributed to the wall failure.  Relators stress, however, that the premise of their claims is that Kiewit falsely certified compliance in exchange for government funds in violation of federal and state law, and not that Kiewit was responsible for the wall failure.

Relators allege that they conducted an independent investigation of the failure and provided the results of that investigation to the local and federal governments on May 17, 2012.  Id. ¶ 104.  This action was filed on May 25, 2012.

United States District Court
Northern District of California

1    Previously, the Court granted Defendants' first motion to dismiss the First Amended

2  Complaint on October 24, 2013, ECF No. 69, because Relators' claims were barred by the public

3  disclosure bar of both the Federal and California False Claims Acts, and Relators were not

4  "original sources" of information within the meaning of those statutes.  The Court also found that

5  Relators had failed adequately to allege a reverse false claim, any claims against the individual

6  Defendants, a conspiracy claim, and retaliation and defamation claims on behalf of Relator SSL,

7  LLC.  However, although the Court dismissed Relators' First Amended Complaint in its entirety,

8  the Court also rejected Defendants' argument that Relators had failed adequately to allege falsity,

9  materiality, and scienter.  Relators' Second Amended Complaint was filed November 21, 2013.

10  ECF No. 70.

11  **II.    LEGAL STANDARDS**

12    On a motion to dismiss, the Court accepts the material facts alleged in the complaint,

13  together with all reasonable inferences to be drawn from those facts, as true.  Navarro v. Block,

14  250 F.3d 729, 732 (9th Cir. 2001).  However, "the tenet that a court must accept a complaint's

15  allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported

16  by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  To be entitled to

17  the presumption of truth, a complaint's allegations "must contain sufficient allegations of

18  underlying facts to give fair notice and to enable the opposing party to defend itself effectively."

19  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011), cert. den'd, --- U.S. ----, 132 S.Ct. 2101

20  (2012).

21    To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to

22  relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

23  Plausibility does not mean probability, but it requires "more than a sheer possibility that a

24  defendant has acted unlawfully."  Iqbal, 556 U.S. at 687.  "A claim has facial plausibility when the

25  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

26  defendant is liable for the misconduct alleged."  Id.

27    In addition, fraud claims are subject to a heightened pleading standard.  "In alleging fraud

28  or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

Fed. R. Civ. P. 9(b). The allegations must be specific enough to give a defendant notice of the particular misconduct alleged to constitute the fraud such that the defendant may defend against the charge. Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). In general, allegations sounding in fraud must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## III.   REQUESTS FOR JUDICIAL NOTICE

Although a court's review on a motion to dismiss is generally limited to the allegations in the complaint, Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001), courts may properly take judicial notice of material attached to the complaint, and of matters in the public record. Fed. R. Evid. 201(b). See, e.g., Castillo-Villagra v. INS, 972 F.2d 1017, 1026 (9th Cir. 1992). In addition, the "incorporation by reference" doctrine allows judicial notice of a document attached by a defendant to a motion to dismiss when a "plaintiff's claim depends on the contents of a document" and "the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). Therefore, a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment; however, courts may not take judicial notice of facts subject to reasonable dispute. Lee, 250 F.3d at 689. A court "shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d).

For these reasons, and the reasons discussed in the Court's prior Order, the Court hereby GRANTS Defendants' request for judicial notice, ECF No, 75, in its entirety. Defendants' second request for judicial notice, ECF No. 88, is hereby GRANTED as well. The Court notes that the publicly available power-point presentation attached as Exhibit E is judicially noticeable only for the fact that the government investigation report was made, and not for the truth of the matter asserted.

United States District Court
Northern District of California

## IV.    ANALYSIS

The False Claims Act ("FCA") authorizes private parties with knowledge of past or present fraud on the United States to sue on the Government's behalf to recover civil penalties and damages.  31 U.S.C. §§ 3729–3733.  Similarly, the California False Claims Act ("CFCA") authorizes private parties to sue on behalf of the State to recover civil penalties and damages.  Cal. Gov. Code § 12650, *et seq.*

### A.    Public Disclosure Bar

Both the FCA and the CFCA require courts to dismiss false claims suits based on information already disclosed publicly unless the relator is an "original source" of the information. See 31 U.S.C. § 3730(e)(4)(A); Cal. Gov. Code § 12652(d)(3)(A).  This rule arises out of the twin purposes of the FCA: "to alert the government as early as possible to fraud that is being committed against it and to encourage insiders to come forward with such information where they would otherwise have little incentive to do so."  U.S. ex rel. Biddle v. Bd. of Trustees of Leland Stanford, Jr. Univ., 161 F.3d 533, 538 (9th Cir. 1998).  Where neither purpose is implicated, the relator should not be rewarded:

> Where the relator brings new information of fraud to the government, the relator should be rewarded regardless of how the relator came into possession of that information.  The reason is that the allegations in the complaint, being previously undisclosed, are valuable to the government in remedying the fraud that is being committed against it.  On the other hand, where the allegations of the fraud are already public knowledge, the relator confers no additional benefit upon the government by subsequently repeating the fraud allegations in his complaint.  The relator should be rewarded only if he was an original source of the information.

Id.  The Court previously found that the public disclosure bar applied to Relators' claims, and that they were not "original sources" within the meaning of the statutes.

#### 1.    Disclosure

The FCA's public disclosure bar requires courts to dismiss a false claims action, unless opposed by the Government, if "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed (i) in a Federal criminal, civil or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability

Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A). The CFCA's public disclosure bar is substantially identical, and requires that courts dismiss any action that falls under the bar "unless opposed by the Attorney General or prosecuting authority of a political subdivision." Cal. Gov. Code § 12652(d)(3)(A). See generally, United States v. Alcan Elec. & Eng'g, Inc., 197 F.3d 1014, 1018 (9th Cir. 1999); Bates v. Mortgage Elec. Registration Sys., Inc., 694 F.3d 1076, 1081 (9th Cir. 2012). "[T]he substance of the disclosure need not contain an explicit 'allegation' of fraud . . . so long as the material elements of the allegedly fraudulent 'transaction' are disclosed in the public domain." A-1 Ambulance Serv., Inc. v. California, 202 F.3d 1238, 1243 (9th Cir. 2000).

The Supreme Court has repeatedly observed that the text of the public disclosure bar applies with a "broad sweep" to the forum in which the disclosure occurs, and that the phrase "allegations or transactions" is "wide-reaching." Schindler Elevator Corp. v. U.S. ex rel. Kirk, ---U.S. ----, 131 S. Ct. 1885, 1891 (2011) (quoting Graham County Soil and Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 290 (2010)). The bar applies "when the prior public disclosures are 'sufficient to place the government on notice of the alleged fraud' or 'practice prior to the filing of the qui tam action.'" Bates, 694 F.3d at 1081 (CFCA) (quoting State ex rel. Grayson v. Pac. Bell Tel. Co., 142 Cal. App. 4th 741, 748 (2006) (CFCA) (citing U.S. ex rel. Findley v. FPC–Boron Emps.' Club, 105 F.3d 675, 688 (D.C. Cir. 1997) (FCA)).

Several courts have also stated the test as whether "the prior public disclosures contained enough information to enable the government to pursue an investigation" against the defendant. Alcan Elec. & Eng'g., 197 F.3d at 1019 (9th Cir. 1999). See also U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 654 (D.C. Cir. 1994) (quoting Pettis ex rel. United States v. Morrison-Knudsen Co., 577 F.2d 668, 674 (9th Cir. 1978) ("The question, properly, then, is whether the information conveyed [to the government] could have formed the basis for a governmental decision on prosecution, or could at least have alerted law-enforcement authorities to the likelihood of wrongdoing . . . ."); U.S. ex rel. Found. Aiding The Elderly v. Horizon W., 265 F.3d 1011, 1016 opinion amended on denial of reh'g sub nom. U.S. ex rel. Found. Aiding

6

United States District Court
Northern District of California

1   Elderly v. Horizon W., Inc., 275 F.3d 1189 (9th Cir. 2001) (same).  This test comports with the

2   underlying purpose of the public disclosure bar, which is to discourage "parasitic lawsuits in

3   which those with no independent knowledge of fraud use information already available to the

4   government to reap rewards for themselves without exposing any previously unknown fraud."

5   Seal 1 v. Seal A, 255 F.3d 1154, 1158 (9th Cir. 2001).

6          The Ninth Circuit has also adopted the influential formulation of the test from the D.C.

7   Circuit's decision in Springfield Terminal in analyzing whether the "transactions" in a relator's

8   complaint were publicly disclosed: "'[I]f X + Y = Z, Z represents the allegation of fraud and X

9   and Y represent its essential elements.  In order to disclose the fraudulent transaction publicly, the

10  combination of X and Y must be revealed, from which readers or listeners may infer Z, i.e., the

11  conclusion that fraud has been committed.'"  Horizon West, 265 F.3d at 1015 (quoting 14 F.3d at

12  654).  "X and Y inevitably stand for but two elements: 'a misrepresented state of facts and a true

13  state of facts.'"  Id.  In adopting this test, the Springfield Terminal court observed that knowledge

14  of the misrepresented state of affairs, or X "is *always* in the possession of the government."  14

15  F.3d at 656.  It is the public disclosure of the true state of affairs, or Y, that adds to X and creates

16  the inference Z that fraud has occurred.

17         The Court previously held that news reports and government investigations initiated after

18  the collapse of MSE wall 1897 "contained enough information to enable the government to pursue

19  an investigation" against Kiewit and other contractors involved in the design and construction of

20  the MSE walls, and that the disclosures were "sufficient to place the government on notice of the

21  alleged fraud."  The record before the Court on Relators' Second Amended Complaint is nearly

22  identical.  Rather than providing additional allegations or evidence relevant to the public

23  disclosure, Relators argue that the Court previously erred because the reporting of the bare fact of

24  the wall failures standing alone was insufficient to trigger the bar.  With respect to the government

25  investigations that actually were initiated, Relators argue that, though the relevant governments

26  were unquestionably "on notice," and though they had enough information to pursue an

27  investigation, because LACMTA chose to employ Kiewit as an investigator, the investigation was

28  inadequate, and the results were inaccurate.  That argument is not persuasive.  The quality of the

7

government's investigation is not a factor under the public disclosure bar.  The Court need ask

only whether the public disclosures were sufficient to trigger the bar.  Here, the government was

already in possession of X, the certifications of compliance that Relators allege were

misrepresented.  The media reports of the wall failure, and the ensuing government investigation,

constitute Y, disclosure of the true state of facts — that is, that the walls suffered either from

defective design or construction.  Those facts, taken together, create an inference of fraud

sufficient to trigger a government investigation.  And they did.  Nothing more is required to

trigger the bar.

Indeed, the core problem with Relators' argument stems from their disagreement with the

results of the investigation.  Under Relators' logic, as long as the relator's complaint contains an

alternative theory of fraud from the one publicly disclosed or uncovered by the government, the

public disclosure is insufficient to trigger the bar.  But the particular allegation of fraud need not

be disclosed to trigger the bar; only the facts necessary to infer fraud.  That Relators present an

alternative view of the cause of the wall failure is irrelevant to the question of whether the failure

itself was sufficient to place the government on notice.  It was.

Relators argue that the Court erroneously relied upon the Ninth Circuit's decision in Wang

v. FMC Corp., 975 F.2d 1412, 1417 (9th Cir. 1992), in coming to this conclusion.  In that case,

Wang alleged that a government contractor defrauded the government in its performance of a

contract for a Multiple Rocket Launch System (MRLS), a "cousin" of the Bradley Fighting

Vehicle.  Id. at 1413, 1417.  The MRLS had been experiencing gear failures.  At summary

judgment, Wang "submitted newspaper accounts describing problems with the Bradley's

transmission system, apparently published before the date of Wang's complaint."  Wang argued

that he was nevertheless an "original source" of information in his complaint.  Relators seize on

the fact that Wang "never disputed, and his arguments appear to accept, that his allegation had

been publicly disclosed," id. at 1417, as evidence that the Ninth Circuit's analysis concerning the

public disclosure was dicta.  Relators are partially correct.  Though Wang did not dispute the

point, the Ninth Circuit's analysis necessarily engaged the issue.  First, the Ninth Circuit observed

that the "necessary premise" of the district court's ruling below was that the public disclosure bar

8

applied.  Id.  Next, after noting Wang's apparent concession of the point, the Ninth Circuit held:

> It is true that Wang's allegation about the Bradley is supported by a few factual assertions never before publicly disclosed; but 'fairly characterized' the allegation repeats what the public already knows: that serious problems existed with the Bradley's transmission.  The district court characterized Wang's allegation and most of his information as a rehash of what already had been publicly disclosed. Wang does not dispute this characterization, and it finds support in the record.  (citation omitted).

Id.  Though Wang's concession may have contributed to the Ninth Circuit's ruling, its reasoning is nevertheless persuasive.  Also persuasive is the similar decision in U.S. ex rel. Mateski v. Raytheon Co., No. 2:06-CV-3614-ODW, 2013 WL 692798 (C.D. Cal. Feb. 26, 2013). In that case, the defendant was subcontracted to develop a weather sensor for the federal government.  The relator alleged that the defendant had defrauded the government through cost overruns, noncompliance with specifications, manufacturing and engineering defects, and mismanagement.  Prior to the filing of the suit, government hearing, administrative reports, and news media "broadly discuss[ed] design noncompliance and manufacturing defects" in the weather sensor project.  Id. at *3.  "Though not alleged in detail, it was publicly known that there was rampant mismanagement, deviations from protocol, and other problems with VIIRS."  Id. at *4.  Noting that "public disclosures need not detail information underlying allegations or transactions so long as they supply enough information for the United States to pursue an investigation," the court found that "there was ample information available to initiate an investigation.  And in fact, investigations were pursued . . . .  The public disclosures show not only that the problems with the VIIRS program were known, but that the United States Government was busy trying to rectify the problems."  Id.  Though the relator in that case discussed the problems in greater detail in his complaint, the problems themselves gave rise to investigations that triggered the public disclosure bar.

Although the disclosures in Raytheon were apparently more detailed than those here, the end result is the same.  The media reports and government investigations into the causes of the MSE wall failure in this case were sufficient to trigger the bar.

United States District Court
Northern District of California

Moreover, in addition to the media reports and the government investigations, Relators' particular allegations of fraud were publicly disclosed in a complaint filed by the surety on the supply bond covering Relator SSL seeking indemnity for losses incurred by payments to Kiewit because of the MSE wall failures sixteen days before Relators filed this case.  The complaint attached the termination letter from Kiewit to SSL, which summarized SSL's allegations of fraud. ECF No. 88-1 at 73; Great American Insurance Co. v. SSL, LLC, No. 12-cv-0743-JLQ, Ex. J (May 9, 2012).  See United States v. Alcan Elec. & Eng'g, Inc., 197 F.3d 1014, 1016 (9th Cir. 1999) (Public pleadings may form the basis of public disclosure with the meaning of the False Claims Act); United States v. Hughes Aircraft Co., 162 F.3d 1027, 1033 (9th Cir. 1998) (same).

Relators rely on a number of district court decisions finding that the disclosure bar was not triggered.  None is relevant here.  In United States ex rel. Rakow v. Pro Builders Corp., No. CV 96-130-BU-RWA, 2000 U.S. Dist. LEXIS 21832, at *7–8 (D. Mont. Apr. 4, 2000), allegations of failure to pay prevailing wages did not trigger the public disclosure bar related to the wholly different allegation of the submission of false certifications to the government at issue in that case. The same is true of U.S. ex rel. Cericola v. Fed. Nat. Mortgage Assoc., No. CV 03-2294 GAF VBKX, 2007 WL 4632135 (C.D. Cal. Nov. 27, 2007) reconsideration den'd by 2007 WL 4644626 (C.D. Cal. Dec. 27, 2007), where the FCA allegations that Fannie Mae sought insurance reimbursements on loans that it knew did not qualify for government insurance were wholly distinct from the public disclosure that homeowner borrowers were defrauded in the origination of loans "for home improvement projects that they did not need, could not afford, were overpriced, and were of substandard workmanship."  None of Relators' authorities involved the actual initiation of government investigations into the underlying transaction at issue, as took place here.

## 2.     Original Source Exception

Determining that there was a public disclosure is not the end of the inquiry.  The public disclosure bar does not apply even if the allegations or transactions alleged in the claim were publicly disclosed if the relator is an "original source" of the information.  The FCA defines "original source" as "an individual who either (i) prior to a public disclosure . . . has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are

1   based, or (2) who has knowledge that is independent of and materially adds to the publicly

2   disclosed allegations or transactions, and who has voluntarily provided the information to the

3   Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B).  The CFCA

4   employs a substantially identical definition of "original source."  See Cal. Gov. Code §

5   12652(d)(3)(B).

6        As an initial matter, Relators argue that the Court erred in relying upon U.S. ex rel. Devlin

7   v. State of California, 84 F.3d 358, 361 (9th Cir. 1996), in its prior Order dismissing the First

8   Amended Complaint for the proposition that a relator must be a "direct and independent" source

9   of information in order to qualify as an "original source" within the meaning of the FCA and

10  CFCA.  Previously, Relators alleged that they submitted the declaration of Zachary Strawn, a

11  former employee of Kiewit, to the government as evidence of the alleged fraud.  The Court

12  concluded that, based on Devlin, Relators could not rely on the Strawn declaration because the

13  information in that document did not come from their "own labor," but rather from a third party.

14       The False Claims Act was amended in 2010 to remove the "direct" requirement.  See

15  Patient Protection and Affordable Care Act, Pub. L. 111–148, 124 Stat. 119. § 10104(j)(2).

16  Previously, the FCA defined "original source" in relevant part as "an individual who has direct

17  and independent knowledge of the information on which the allegations are based." 31 U.S.C. §

18  3730(e)(4) (1988).  It is the "direct" requirement that led the Devlin court to conclude that the

19  relators' knowledge in that case was not "direct and independent because they did not discover

20  firsthand the information underlying their allegations of fraud." Devlin, 84 F.3d at 361.  The

21  Court's prior Order failed to address the impact of the amendment on Relators' "original source"

22  allegations in this case.

23       Though few courts have addressed the 2010 amendments to the definition of "original

24  source," the removal of the word "direct" appears to broaden the exception and permit a relator to

25  qualify as an "original source" of information even if that information was obtained indirectly.

26  See, e.g., U.S. ex rel. Booker v. Pfizer, Inc., No. CIV.A. 10-11166-DPW, ___ F. Supp. 2d ____,

27  2014 WL 1271766, at *8 (D. Mass. Mar. 26, 2014) (That relator "obtained his knowledge

28  indirectly . . . poses no obstacle to the applicability of the [amended] 'original source' exception");

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1   U.S. ex rel. Booker v. Pfizer, Inc., No. CIV.A. 10-11166-DPW, 2014 WL 1271766, at *6 (D.

2   Mass. Mar. 26, 2014) (noting 2010 amendments to False Claims Act render "original source"

3   exception "less demanding"; in particular, the removal of the "direct" requirement); U.S. ex rel.

4   Beauchamp v. Academi Training Ctr., Inc., 933 F. Supp. 2d 825, 842 (E.D. Va. 2013) ("[T]he

5   amended language no longer requires that the relator possess direct knowledge, that is, knowledge

6   'acquired through his own efforts, without an intervening agency'").

7          Nevertheless, the Court need not chart the contours of the 2010 amendment to the "original

8   source" exception in connection with the instant motion because Relators' Second Amended

9   Complaint substantially augments the allegations concerning the investigation Relators undertook

10  and the information they provided to the federal and local governments —information, allege

11  Relators, that was obtained directly.  The Court concludes, on the allegations before it, that

12  Relators plausibly allege that they satisfy both the pre- and post-2010 versions of the FCA because

13  they obtained and disclosed to the Government both "direct and independent knowledge of the

14  information on which the allegations are based" and knowledge "that is independent of and

15  materially adds to the publicly disclosed allegations or transactions." [1]

16         While the First Amended Complaint contained the barest of allegations concerning the

17  investigation conducted by Relators and the information disclosed to the Government, the Second

18  Amended Complaint provides comprehensive detail concerning the exact information Relators

19  obtained and disclosed.  For example, Relator Ruel placed observers on the site "to make

20  observations and records of Kiewit's deconstruction of walls and to document the deviations from

21  contract requirements."  SAC ¶ 74.  Ruel's investigation also included "analyzing the reports,

22  interviewing former employees of Kiewit who had been terminated in retaliation for their

23  objecting to Kiewit's purposeful failure to follow the specifications, conducting tests of wire that

24

25  [1] The California False Claims Act was not amended to conform to the 2010 federal False Claims
    Act definition of "original source" until after the events giving rise to this action.  See 2012 Cal.
26  Legis. Serv. Ch. 647 (A.B. 2492) § 3.  However, because Relators no longer rely exclusively on
    information obtained indirectly, but rather on information obtained through Relators' own
27  investigation of the site, the amendment of both the FCA and CFCA turns out to be irrelevant for
    purposes of this motion.  The later amendment of the CFCA may prove relevant upon a fuller
28  record, but the Court need not speculate as to that effect at this juncture.

Kiewit claimed had failed, and commissioning calculations of the effect of failure to install working drainage on the stresses placed on the MSE wall design." Id.  Relator Fryberger "was present on the jobsite after the initial wall failures and interviewed numbers of Kiewit's installation and quality control employees as to the actual methods used to construct the wall." Id. ¶ 77.  Relators also obtained copies of Kiewit's certifications that drains were installed in permeable material that were allegedly false.  Id. ¶ 78.  After the panels of MSE wall 1897 began to move, Ruel

> requested that holes be cored through the concrete panels to view into the backfill and reinforcing area.  On October 19, 2011 Relators had a core hole drilled through the wall panel into the wall to allow them to observe and to photograph the reinforcing steel connections.  Ruel requested Kiewit to core the area behind the MSE wall panels so that he could observe the condition of the backfill and the connections and functioning of the reinforcing steel-sometimes hereafter referred to as "wire."  Ruel observed and discovered that the longer potions of the 90% angles were not visible as they should be, but rather had been broken by downward vertical shear forces and pushed down and buried the wire below the panel connector and into the MSE backfill.  The backfill was saturated and was not draining.  Later 6 wall panels disconnected from the wall.  Reinforcing mesh that was to be properly installed was no longer connected to the panel.

Id. ¶ 80.  On December 12, 2011, Ruel "had calculations run of the effect of wet soils that were not drained as required by the working drawings." Id. ¶ 86.

In late March and April 2012, after Kiewit terminated Relator SSL's contract, Relators gained access to the site by using an endoscope camera, and filmed the site on two weekend days. The video allegedly demonstrated that the drains were not operable.  Id. ¶ 99.  On April 6, 2012, Relators also observed wall 1897's drainage system; the face of the wall was seeping moisture and there was standing water on top of the wall, which led Relators again to conclude that the drainage system was not working.  Id.

Relators also documented the deconstruction of wall 1897.  On January 12, 2012, Ruel attended the deconstruction of wall 1897 and witnessed water "ponding" at the bottom of the excavation.  Id. ¶ 88.  On January 25, Fryberger reported to Rule that, despite the ponding water, no water was discharging from the drains.  Id.  Also in January, Ruel requested and had tested

13

samples of reinforcing wire from the failed wall.  Id. ¶ 93.  In March and April 2012, photographs were taken showing: damage to reinforcing mesh by heavy equipment operated on or near it; downward displaced wire mesh with rusted ends that Relators allege happened because of Kiewit's installation; inoperable underdrain pipes; and the absence of underdrain pipes in certain places.  Id. ¶ 101.  Relators also obtained photographs of the installation of the MSE walls, showing that Kiewit operated heavy construction equipment "directly on top of reinforcing wire mesh" in violation of construction specifications.  Id. ¶ 102.

Relators allege that they provided their "investigation materials and information" to the Inspector General for Los Angeles Metro and to the Inspector General of the Department of Transportation prior to filing this suit.  Id. ¶¶ 14, 104.

Defendants' only response to these additional allegations is that the allegations do not "materially add" to the public disclosures discussed above.  The Court disagrees.  The detailed allegations go far beyond the information disclosed in the news reports and present information not discussed in the government investigations.  While it is true that the reports produced by Defendants discuss, in generalities, certain aspects of the construction, such as the drainage and backfill, it is plainly the case that the testing and investigation allegedly performed by Relators materially augments the information in those public disclosures, as well as materially augments the information contained in the complaint in the Great American Insurance Co. v. SSL, LLC complaint, which also discusses Relators' allegations of fraud only in generalities.

Defendants also argue, without authority, that SSL is not a "voluntary whistleblower" and therefore cannot qualify as an "original source."  The Ninth Circuit has previously stated that "[i]nsiders who have no duty to disclose fraud, i.e., who do so voluntarily, should be encouraged to take 'significant personal risks to bring such wrongdoing to light,' and should be rewarded for doing so."  Biddle, 161 F.3d at 538.  But nothing in that decision or any other suggests that because SSL may have been contractually obligated to investigate the cause of the failures, it is disqualified as an "original source."[2]  Nor is the Court aware of any authority suggesting that

_____

[2] Whether SSL had such a contractual obligation is a question the Court need not decide now.

because SSL stands to gain competitively or in reputation through this lawsuit, that it may not serve as a relator.[3]

The Court notes that Relators' burden will increase as the litigation proceeds.  While the Court takes as true the allegations in Relators' complaint, the Court has not been provided with the exact materials Relators allegedly gave to the government, nor has discovery revealed to what extent that information was already available to the government or disclosed in other government reports or media reports.  The Court concludes today only that Relators have adequately alleged, for pleading purposes, that they are "original sources" of information obtained directly and independently.

> **B.      Plaintiffs' Claims Against Kiewit Infrastructure Group, For Reverse False Claim, and For Conspiracy**

As an initial matter, the Court notes that Relators concede that they have not asserted the following claims in the Second Amended Complaint, despite apparent references to them: (1) any claims against Kiewit Infrastructure Group, even though that entity is named as a Defendant, ECF No. 83 at 21 ("Relators understand that the claims against Kiewit Infrastructure were dismissed, and no new claims have been added."); any claims for reverse false claim, id. at 22; and any conspiracy claims, id.  The Court therefore will dismiss those claims without leave to amend.

---

[3] Defendants did cite to the district court's decision granting summary judgment in United States ex rel. Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp., No. 4-96-734-ADM, 1999 U.S. Dist. LEXIS 23036, at *19 (D. Minn. Mar. 16, 1999), and in particular, the portion of the decision in which the district court held that the relator was not an "original source" because the trade association was using the false claims act case "as a tool in a marketplace battle," and thus, the association had adequate "financial incentive" to report fraud.  See id. at *19–20("This qui tam suit is being used as a sword to attack the actions of a competitor rather than a shield to protect the interests of a vulnerable individual.").

But the district court's "original source" holding was reversed by the Eighth Circuit on appeal. See Minnesota Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp., 276 F.3d 1032, 1050 (8th Cir. 2002), reh'g and reh'd en banc denied March 25, 2002, cert. denied 537 U.S. 944 (2002) (holding "[a]n association's knowledge is in no way parasitic of its members and is 'direct' within the meaning of the [pre-2010] original source clause" and that "that the Association fulfilled the requirement that it [voluntarily] provide the information to the government before filing suit").

**C.      Relators' Claims Against Individual Defendants**

Defendants also move to dismiss Relators' claims against the individual Defendants as inadequately alleged pursuant to Rule 9(b)'s heightened fraud pleading requirement.

As an initial matter, the allegations new defendants Ken Riley and Terry Robinson must be dismissed because the Court did not grant Relators leave to add new claims against new Defendants.  See Fed. R. Civ. P. 15(a)(2).  Even if the amendments had been properly made, however, the claims would still have to be dismissed.  Riley is alleged to have "falsely informed" LACMTA and Caltrans that MSE wall 1897 failed due to SSL's defective wire rather than hydrostatic pressure caused by lack of drainage.  SAC ¶ 129.  Relators do not allege or explain how that allegation, taken as true, supports a claim for the submission of false claims to the federal or state governments.  Moreover, it appears from the complaint that the earliest allegations concerning Riley pertain to conduct *after* the alleged false certifications were made.

As for Robinson, Relators allege only that "Terry Robinson is the Assistant District Manager at Kiewit Infrastructure West Co. and the project 'sponsor.'  He was aware of, and acted in furtherance of, the activities of defendants Riley and Rattai."  Id. ¶ 132.  These threadbare allegations are insufficient to allege Robinson's personal involvement in the alleged false claim.  "'Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." United States v. Corinthian Colleges, 655 F.3d 984, 997–98 (9th Cir. 2011) (quoting Swartz v. KPMG LLP, 476 F.3d 756, 764–65 (9th Cir. 2007)).  Relators' allegations concerning Riley and Robinson do not meet this standard.

With respect to Rattai, Relators allege that "Mr. Rattai violated 31 USC 3729 (a) (1) (A) and (B), in that he knew that Kiewit was purposefully deviating from the contract requirements, not installing materials that it was certifying that it was installing, knowingly presenting false and fraudulent claims for payment or approval, and knowingly made, and caused to be used, false records material to a false or fraudulent Claim."  SAC ¶ 124.  As the Court previously held, such general and conclusory allegations are insufficient to support a claim under the FCA or the CFCA.

16

The same is true of Relators' allegations against Hesse.  Relators allege that Hesse violated 31 USC 3729 (a)(1) (A) and (B) by knowingly ordering work to be done that was in violation of the project requirements and knowingly allowing false records to be created that falsely certified compliance with the project requirements."  Id. ¶ 126.  In addition, Relators allege that Hesse terminated or reassigned quality control employees Zachary Strawn, Chris Sobek, and Fred Foley, "for documenting and reporting Kiewit's knowing deviation from the contract requirements."  Id. ¶ 127.  These allegations are as conclusory as those against Rattai.

For these reasons, the Court will dismiss Relators' claims against the individual Defendants for violation of the FCA and the CFCA.  Because Relators were previously afforded an opportunity to amend the complaint, this time, dismissal will be without leave to amend.

### D.    Retaliation

Although it is not entirely clear from the Second Amended Complaint,[4] the Court concludes that the only party asserting a retaliation claim is Relator SSL, LLC.  The Court reaches that conclusion for several reasons.

First, the only form of retaliation alleged in Relators' second claim for relief is the termination of SSL from the project.  SAC ¶ 125.  Second, the third claim for relief, titled "Claims of SSL, LLC," simply repeats the same allegations, but only as to Defendant Kiewit.  Third, in their opposition to the present motion, Relators also seem to state that the only retaliation claim is asserted on behalf of SSL.  ECF No. 83 at 20.

Accordingly, the Court concludes that neither the individual Relators nor Relator Surecast have asserted any claim for retaliation in violation of 31 U.S.C. § 3730(h).  The Court will now address the sole retaliation claim asserted by SSL.

### 1.    SSL, LLC

Prior to 2009, § 3730(h) only permitted "employees" to sue.  In 2009, Congress amended the section to allow retaliation claims made by any "employee, contractor, or agent."  See Pub. L. 111-21, § 4(d), 123 Stat. 1624(May 20, 2009).  Defendants move to dismiss SSL, LLC's

_____

[4] See, e.g., ECF No. 70 at 19 (captioned "Retaliation Against *Relators and* Their Company, SSL, LLC" (emphasis added)).

United States District Court
Northern District of California

retaliation claim on the ground that only individuals can assert a claim pursuant to § 3730(h).  SSL argues that the addition of "contractor" entitles SSL to sue for retaliation because SSL was Kiewit's contractor.  Defendants claim that, after reviewing all 110 Ninth Circuit decisions concerning § 3730(h), they were unable to locate any published or unpublished opinion of the Ninth Circuit or its district courts in which a corporate entity sustained an FCA retaliation claim. Neither party cites any caselaw on this question, and the Court has not located any.

However, the statute, on its face, appears incompatible with Relators' contention that entity contractors rather than merely individual contractors are entitled to sue for retaliation.  Section 3730(h) provides:

> **(1) In general.**--Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.
>
> **(2) Relief.**--Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.  An action under this subsection may be brought in the appropriate district court of the United States for the relief provided in this subsection.

Though the statute authorizes the award of "all relief necessary" to make the plaintiff whole, the list of examples of authorized relief comprises "reinstatement with the same seniority status," "2 times the amount of back pay," "interest on the back pay," and "special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees."  These examples of relief all have one thing in common — they are directed to individual plaintiffs, not entities.

Further, the legislative history concerning the addition of the "contractor, or agent" makes clear that Congress added "contractor, or agent" to the statute in response to court decisions

1    limiting retaliation plaintiffs to employees and not independent contractors.  <u>See</u> Sylvia, The False

2    Claims Act: Fraud Against the Government § 5:11 (citing 155 Cong. Rec. E1295, E1300 (daily ed.

3    June 3, 2009) (extension of remarks) (statement of Cong. Berman); H.R. Rep. No. 97, 111th

4    Cong., 1st Sess. (2009) (to accompany H.R. 1788, False Claims Act Correction Act of 2009)

5    ("The amendments sought to address court decisions that had concluded that persons who were

6    not technically employees, such as independent contractors or doctors without traditional

7    employment relationships with hospitals."); S. Rep. No. 110–507, 110th Cong., 2nd Session

8    (September 25, 2008), 2008 WL 4415147 at *26–27 (discussing processor "The False Claims Act

9    Correction Act Of 2008"; explaining Congress sought to reverse courts that limited retaliation

10   protection "through various decisions narrowly interpreting the definition of "employee" and thus

11   leaving contractors and subcontractors open to retaliation . . . .  The Committee believes that it is

12   necessary to include these additional terms to assist individuals who are not technically employees

13   within the typical employer-employee relationship, but nonetheless have a contractual or agent

14   relationship with an employer.").  <u>See</u>, <u>e.g.</u>, <u>Vessell v. DPS Associates of Charleston, Inc.</u>, 148

15   F.3d 407, 411 (4th Cir. 1998) (holding pre-2009 § 3730(h) did not apply to independent

16   contractors).  Nothing suggests it was Congress' intent also to broaden the retaliation entitlement

17   to entity plaintiffs as well as individual plaintiffs.

18       The history of the retaliation provision, of course, points in the same direction, as only

19   employees were entitled to sue, beginning with the adoption of the provision in 1986.  <u>See</u>

20   <u>Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson</u>, 545 U.S. 409, 412 (2005)

21   ("The 1986 amendments to the FCA created a third enforcement mechanism: a private cause of

22   action for an individual retaliated against by his employer for assisting an FCA investigation or

23   proceeding").

24       SSL's only argument on this point is that "contractor" means "contractor."  On balance,

25   given the history behind the provision and the reason for its adoption, as well as the plain

26   implication from the relief section, and in the absence of any authority provided by SSL, the Court

27   concludes that § 3730(h) entitles only individual employees, contractors, or agents to sue for

28

United States District Court
Northern District of California

retaliation.  For this reason, the Court will dismiss SSL's claim against all Defendants for violation of § 3730(h) without leave to amend.

### 2.       Individual Defendants

The False Claims Act, prior to its amendment in 2009, prohibited retaliatory conduct against an employee "by his or her employer."  The same 2009 FCA amendment discussed above removed the term "employer" from § 3730(h).  Relators argue that, as a result, any person may be held liable for retaliatory conduct under the FCA.  According to Relators, the plain language of the statute dictates that result.  But the statute's plain language does not explicitly subject *anyone* to liability.  Instead, it merely states that protected individuals "shall be entitled to all relief necessary" to make the individual "whole" if the individual is "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment . . . ." 31 U.S.C. § 3730(h)(1).

The 2009 amendment is ambiguous on the question of whom may be liable for violation of § 3730(h).  However, as discussed above, the history of the provision and the amendment provides substantial clarity. Zuress v. Donley, 606 F.3d 1249, 1253 (9th Cir. 2010) ("If the statutory language is ambiguous, we consult legislative history.").  Since 1986, the False Claims Act has protected "whistleblowers" from retaliation "*by their employers*." Moore v. California Inst. of Tech. Jet Propulsion Lab., 275 F.3d 838, 845 (9th Cir. 2002) (emphasis added); see also U.S. ex rel. Hopper v. Anton, 91 F.3d 1261, 1269 (9th Cir. 1996) ("Congress added 31 U.S.C. § 3730(h) to the FCA in 1986 to protect 'whistleblowers,' those who come forward with evidence their employer is defrauding the government, from retaliation by their employer.").  The 2009 amendment to the retaliation provision was meant only to broaden the category of "employee" eligible for whistleblower protection to any "employee, contractor, or agent," not to broaden the class of persons subject to liability under the provision.  Nothing in the legislative history suggests that Congress intended silently to extend liability under the FCA to anyone other than the employer or entity with whom the plaintiff has a contractor or agency relationship.  Relators ignore that "by necessity the statute could no longer refer only to 'employers' since it would apply to entities which had an independent contractor or agency relationship with persons subject to the

United States District Court
Northern District of California

United States District Court
Northern District of California

1     Act."  U.S. ex rel. Abou-Hussein v. Sci. Applications Int'l Corp., No. CIV.A. 2:09-1858-RMG,

2     2012 WL 6892716, at *3 n.4 (D.S.C. May 3, 2012) aff'd, 475 F. App'x 851 (4th Cir. 2012).  It is

3     this reason that likely led Congress to remove the "employer" language.

4            Moreover, the Court must interpret the 2009 amendment "in light of case law that pre-

5     existed adoption" of the amendment.  Zuress, 606 F.3d at 1253.  At the time of the 2009

6     amendment, several courts had held that the use of the term "employer" in the predecessor statute

7     precluded liability for individuals who were not employers of the whistleblower.  See, e.g., U.S.

8     ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc., 322 F.3d 738, 739 (D.C. Cir. 2003); U.S. ex rel.

9     Golden v. Arkansas Game & Fish Comm'n, 333 F.3d 867, 871 (8th Cir. 2003).  Had Congress

10    intended to overrule this line of cases, it could have.  Instead, the 2009 amendment is silent as to

11    liability for coworkers, other employees, or otherwise non-employer individuals, and historically,

12    it had only ever been held to apply to employers.

13           A recent District of Arizona decision thoroughly and persuasively addressed Relators'

14    argument and rejected it based on the legislative history discussed above.  See  Wichansky v.

15    Zowine, No. CV-13-01208-PHX-DGC, 2014 WL 289924, at *3–5 (D. Ariz. Jan. 24, 2014).  A

16    number of other courts have come to the same conclusion.  See, e.g., Monsour v. New York State

17    Office for People with Developmental Disabilities, No. 1:13-CV-0336 TJM CFH, 2014 WL

18    975604, at *11 (N.D.N.Y. Mar. 12, 2014); Lipka v. Advantage Health Grp., Inc., No. 13–CV–

19    2223, 2013 WL 5304013, at *12 (D. Kan. Sept. 20, 2013); Abou-Hussein, 2012 WL 6892716, at

20    *3; Howell v. Town of Ball, No. CIV.A. 12-951, 2012 WL 6680364, at *2 (W.D. La. Dec. 21,

21    2012).  The Court finds these authorities persuasive and likewise concludes that the 2009

22    amendment did not expand liability to individuals such as the individual Defendants named here,

23    e.g., coworkers, supervisors, or corporate officers who are not employers, or who lack a contractor

24    or agency relationship with the plaintiff.[5]

_____

25    [5] Relators rely upon three decisions in which courts have accepted Relators' argument.  See, e.g.,

26    U.S. ex rel. Moore v. Cmty. Health Servs., Inc., No. 3:09CV1127 JBA, 2012 WL 1069474, at *9
      (D. Conn. Mar. 29, 2012) (holding anyone may be liable under § 3730(h) because "[t]he current

27    Section 3730(h) following the 2009 amendments . . . conspicuously omits the word 'employer.'");
      Weihua Huang v. Rector & Visitors of Univ. of Virginia, 896 F. Supp. 2d 524, 548 n.16 (W.D.

28    Va. 2012) (holding same because "by eliminating the reference to 'employers' as defendants in §

United States District Court
Northern District of California

1    Consequently, even if SSL were entitled to assert a claim for violation of § 3730(h), it

2    would be barred from doing so with respect to the individual Defendants.

3                                    *          *          *

4    Because Relators have failed to assert a valid claim for violation of § 3730(h), because

5    SSL's retaliation claim is barred as a matter of law, and because Relators have previously been

6    afforded an opportunity to amend their retaliation claim, the Court will dismiss the retaliation

7    claim without leave to amend.

8    **E.    Defamation**

9    The Court previously dismissed Relators' defamation claim because the allegations

10   concerning the allegedly defamatory statements were impermissibly vague and conclusory, and

11   did not permit the Court to identify the statements at issue, nor to conclude whether the statements

12   were permissible "opinion" statements.  Relators' Second Amended Complaint alleges: "Kiewit

13   approached Caltrans with the false and defamatory representations that SSL, LLC's proprietary

14   system and steel materials provided were the cause of the wall failures . . . .  As a result Caltrans

15   withdrew the approval of SSL, LLC's proprietary system for state highway projects from March

16   2012 until early August 2012."  SAC ¶¶ 139–40.

17   Relators' Second Amended Complaint ignores the Court's prior Order that each claim be

18   "clearly and separately" listed, and also merely repeats the same vague allegation made in the First

19   Amended Complaint that the Court already found insufficient.  Compare FAC, ECF No. 18 ¶ 97

20   with SAC ¶ 139.  The Court will dismiss the defamation claim without leave to amend.

21   **V.    MOTION TO STAY**

22   Because the Court sustains certain of SSL's FCA and CFCA claims, the Court must

23   address Defendants' alternative request for a stay of this action in favor of an action Kiewit filed

24   in state court against Relator SSL and others for breach of contract and other claims arising out of

25   _____

26   3730(h)(1), the 2009 amendment effectively left the universe of defendants undefined and wide-
     open."); Laborde v. Rivera-Dueno, 719 F. Supp. 2d 198, 205 (D.P.R. 2010) on reconsideration on

27   other grounds, No. CIV. 09-1368 JP, 2011 WL 814965 (D.P.R. Mar. 4, 2011) (same).  Those same
     three decisions have been rejected as unpersuasive by the above-cited decisions, including

28   Monsour and Lipka, because none discussed the legislative history behind the 2009 amendment to
     § 3730(h).  This court finds those decisions unpersuasive for the same reason.

1    the same MSE retaining wall failure.  Kiewit Pacific Co. v. SSL LLC, No. BC496136 (LA Super.

2    Ct. Nov. 21, 2012).

3         The Court's power to stay proceedings "is incidental to the power inherent in every court

4    to control disposition of the cases on its docket with economy of time and effort for itself, for

5    counsel, and for litigants."  Landis v. N. Am. Co., 299 U.S. 248, 254 (1936).  In determining

6    whether a stay is warranted, courts consider the potential prejudice to the non-moving party; the

7    hardship or inequity to the moving party if the action is not stayed; and the judicial resources that

8    would be saved by simplifying the case or avoiding duplicative litigation if the case before the

9    court is stayed.  CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962).  The Ninth Circuit "has

10   sustained or authorized in principle Landis stays on several occasions."  Lockyer v. Mirant Corp.,

11   398 F.3d 1098, 1110 (9th Cir. 2005).

12        The Court concludes that the overlap between the present case and the state court action is

13   substantial, and that a stay is appropriate.  In the state case, Kiewit has sued SSL for breach of

14   contract, and SSL has counter-claimed against Kiewit, with regard to the same wall project at

15   issue in this federal case.  Kiewit's alleged misrepresentations to the federal government in

16   connection with that project will be common to both actions.  Fact discovery in the state action is

17   likely to include most, if not all, of the documentary and deposition evidence in support of both

18   cases.  Thus, the litigation and resolution of the state case is likely to simplify the federal

19   proceedings.  Moreover, Relators are not able to make a strong showing of prejudice, since SSL is

20   a party in both cases, and will have access to the same or substantially identical discovery in both

21   cases.

22   **VI.    CONCLUSION**

23        For the foregoing reasons, the Court hereby GRANTS in part and DENIES in part

24   Defendants' motion to dismiss the Second Amended Complaint, and in the alternative to stay, as

25   follows:

26        1.      Defendants' motion to dismiss Relators' claims against Kiewit Pacific Company

27   for violation of 31 U.S.C. § 3729(a)(1)(A) –(B) and California Government Code § 12650(a)(1)–

28   (2) is hereby DENIED;

United States District Court
Northern District of California

United States District Court
Northern District of California

2.      Relators' claims against Kiewit Infrastructure Group, and for reverse false claim or conspiracy, to the extent those claims have been asserted, are hereby DISMISSED.  Relators may not assert those claims without leave of Court to amend the complaint.

3.      Relators' claim, to the extent one has been asserted, for retaliation in violation of 31 U.S.C. § 3730(h) against all Defendants is hereby DISMISSED.  Relators may not assert those claims without leave of Court to amend the complaint.

4.      Relators' FCA and CFCA claims against the individual Defendants are hereby DISMISSED.  Relators may not assert those claims without leave of Court to amend the complaint.

5.      Relators' defamation claim is hereby DISMISSED.  Relators may not assert a defamation claim without leave of Court to amend the complaint.

6.      The Court hereby sets a case management conference for May 13, 2015 at 2:00 p.m.  This action is STAYED until that time.  The parties shall file a joint case management conference statement by April 30, 2015, apprising the Court of the status of the state court case and advising whether a further stay is warranted.

**IT IS SO ORDERED.**

Dated:  May 14, 2014



_____
JON S. TIGAR
United States District Judge